UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCIROCCO GILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 12-cv-6746 |
| NICHOLAS LUDWIG and the CITY OF ) | |
| CHICAGO, ) | |
| ) | |
| Defendants. ) | Judge Sharon Johnson Coleman |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scirocco Giles ("Giles") filed an Amended Complaint on February 14, 2013, alleging a violation of his civil rights pursuant to 42 U.S.C. § 1983 through the use of excessive force by defendant Chicago Police Officer Nicholas Ludwig as well as various state law claims. Additionally, Giles asserts a *Monell* claim against the defendant, City of Chicago ("the City"), alleging the constitutional injury was caused by deficiencies in how the City trains, supervises, controls, disciplines, and investigates its police officers. On October 26, 2013, the City filed a Motion to Bifurcate [44] the excessive force and state law claims from the *Monell* claims and to stay discovery and trial on the *Monell* claims. For the reasons stated herein, the Court denies the City's motion to bifurcate and to stay the proceedings without prejudice.

**Background**

Giles alleges that on September 20, 2011, he was talking with a friend and two women near 58th Street and Elizabeth Street in Chicago, Illinois at approximately 12:15 a.m. when a marked Chicago Police car pulled up and two officers got out and approached them. (Dkt. 13, Am. Compl. at ¶¶8-9). Giles and his friend were in a parked car when the officers directed Giles

1

to get out of the car. Giles admits that he had a loaded handgun tucked into his waistband, which he claims to carry for personal protection due to the dangers of the neighborhood in which he lives. (*Id*. at ¶11). Giles alleges that neither he, nor his companions, had done anything wrong, but he was afraid that if the officers searched him they would find the gun and jeopardize his newly obtained employment. (*Id*. at ¶¶ 12-14). Giles took off running. One of the officers gave chase on foot, the other in the squad car. During the foot chase, the handgun began to fall out of his waistband and he grabbed it with his hand. (*Id*. at ¶ 17).

Defendant Chicago Police Officer Ludwig and another Chicago Police Officer were in the vicinity when they heard the radio call of a foot chase. As Giles ran from an alley past Officer Ludwig's squad car, Officer Ludwig saw the gun in Giles hand and shouted "Gun." (*Id*. at ¶¶ 20-21). Ludwig fired two shots through the open window of the squad car at Giles as he ran away. (*Id*. at ¶22). Giles alleges that Ludwig did not announce he was a police officer or order him to drop the gun. One of the bullets hit Giles in his lower back injuring his spinal cord and paralyzing Giles from the waist down. (*Id.* at ¶¶23-24, 28). Giles claims that his injuries are a result of excessive force in violation of his civil rights.

**Legal Standard**

"Federal Rule of Civil Procedure 42(b) permits the separate trial of any issue when separation would be in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000) (internal citations omitted); *Fed. R. Civ. P. 42(b)*. Only one of the above criteria needs be satisfied for a court to order a separate trial. *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000). The district court has considerable discretion to order the bifurcation of a trial.

*Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000). There is a growing body of precedent in this district for both granting and denying bifurcation in §1983 cases.

**Discussion**

The City moves for bifurcation arguing that the remaining discovery on the *Monell* claim is overwhelming and burdensome; that bifurcation will help prevent undue prejudice to Ludwig and the City; bifurcation will not affect Giles' recovery of compensatory damages to which he may be entitled if he prevails against Ludwig; and the City has submitted a proposed "Consent to Entry of Judgment Against Defendant City of Chicago." Giles opposes bifurcation.

*1. Efficiency and Economy*

The City argues that bifurcation will allow it to avoid burdensome and potentially unnecessary discovery and litigation costs. Relying on *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), the City asserts that if Giles fails to establish a constitutional violation, he will as a matter of law be unable to prove any *Monell* violation. Therefore, according to the City, bifurcation and staying discovery on this issue will result in a substantial savings in time and expense. Giles argues that the City's argument is somewhat disingenuous in that the City is largely responsible for the delay in *Monell* discovery, that very little remains of discovery, and that the City waited until after significant discovery had been exchanged to claim that bifurcation would be more efficient. The City counters that Giles did not comply with his Rule 26 ongoing duty to supplement discovery disclosures. While both parties lay blame for drawn out discovery on the *Monell* issue, it is clear that at this juncture the bulk of written discovery and a portion of oral has been completed. The deposition of the 30(b)(6) witness was slated to be completed by November 4, 2013. (Dkt. 42). Giles asserts that the *Monell* portion of the trial will likely constitute only three witness, including the 30(b)(6) witness to explain the purpose and role of

3

the Independent Police Review Authority ("IPRA"), plaintiff's expert who will focus on IPRA reports of closed investigations of police related shootings from October 1, 2006, through the date of the shooting at issue, September 20, 2011, and defendant's rebuttal expert. If, indeed, the *Monell* portion of the trial is limited to three witnesses, it is likely to be substantially shorter than the substantive claim. Moreover, if Giles is unable to show a constitutional violation, the City may make the appropriate motion to eliminate the *Monell* claim. Therefore bifurcation would not result in a substantial savings of time and effort.

*2. Prejudice*

The City also argues that bifurcation will prevent severe prejudice to both defendants. The City contends that both defendants might be prejudiced by the introduction at trial of "extensive evidence in support of municipal policies and practices extraneous to the underlying incident." (Dkt. 44 at 8). Specifically, the City's concern is that the introduction of misconduct by non-party police officers poses a substantial risk that a jury will conclude that Chicago police officers, including Ludwig, routinely engage in similar misconduct in conformity with municipal policy and practice. As several courts in this district have noted, any potential prejudice that might arise from a unitary trial can be mitigated through the use of limiting instructions, motions in limine, and the Rules of Evidence. *See, e.g., Elrod v. City of Chicago,* 2007 U.S. Dist. LEXIS 80941, at *24 (N.D. Ill. Nov. 1, 2007); *Medina v. City of Chicago,* 100 F. Supp. 3d 893, 897 (N.D. Ill. June 16, 2000); *Nessel v. City of Northlake*, 1994 U.S. Dist. LEXIS 17345, at 2 (N.D. Ill. Dec. 5, 1994). This Court therefore finds this argument unpersuasive.

*3. Bifurcation will not affect Giles' recovery of compensatory damages*

The City argues that even if Giles prevails against the City on his *Monell* claim after a finding of liability against Ludwig, he is not entitled to recover any additional compensation and

thus has no financial incentive to proceed on his *Monell* claim. The City also suggests that bifurcation will prevent abuse of the fee shifting available in civil rights cases by the plaintiff's attorneys generating additional fees by litigating the *Monell* claim. Giles responds that there are significant non-economic benefits to suing a municipality, such as accountability for, and deterrence of, civil rights violations. While it is important to recognize that bifurcation is not a dismissal of Giles' *Monell* claim, it is also important to acknowledge that mere monetary compensation for constitutional injuries may not have the same deterrent effect as a judgment naming the municipality as responsible based on its policies and customs. *See, e.g., Grant v. City of Chicago,* 2006 U.S. Dist. LEXIS 5497 at *3 (granting motion to bar trial of *Monell* claim but acknowledging that "unconstitutional municipal conduct is more likely to elude justice as a result of decisions like this"); *Lopez v. City of Chicago,* 2002 U.S. Dist. LEXIS 3458 at *3 (stating that a finding of liability against individual employees, as compared to a finding of liability against a municipality, "may decrease the likelihood of the municipality's acting to prevent future violations when that municipality is, or is not, named in a judgment"); *Medina,* 100 F. Supp. 2d at 896.

*4. The City's Proposed "Consent to Entry of Judgment"*

If this Court grants bifurcation, the City proposes a "Consent to Entry of Judgment" that it contends would guarantee that Giles will receive any awarded compensatory damages if a jury finds that his constitutional rights were violated even if Officer Ludwig prevails on the defense of qualified immunity. Thus, according to the City, the proposed Consent negates the need for a second trial on the *Monell* claim. Giles responds that the Consent provides Giles with nothing and is an illusory offer. The City's proposed "Consent" would only prevent any subsequent

5

litigation if Giles prevails and if the City contested statutory indemnity under 745 Ill. Comp. Stat. 10/9-102.

Giles also takes issue with the provision that the City will pay any compensatory damages even if the jury finds for Officer Ludwig on the basis of qualified immunity. However, as the court pointed out in *Castillo v. City of Chicago*, whether qualified immunity applies is generally a question of law for the court to decide and thus the procedural problem posed by this provision is somewhat alleviated. 2012 U.S. Dist. LEXIS 66591, at *15 (N.D. Ill. May 11, 2012) (citing *Warlick v. Cross*, 969 F.2d 303, 305 (7th Cir. 1992) and Federal Civil Jury Instructions of the 7th Circuit, § 7.18, Qualified Immunity, Committee Comments.). Moreover, a defendant is not likely to prevail on a qualified immunity defense in the context of excessive force claim such as this one. Indeed, at least one court in this district has suggested that asserting qualified immunity in this context may run afoul of Federal Rule of Civil Procedure 11 (*see Readus v. Dercola,* 2012 WL 1533167, at *3 (N.D.Ill. May 1, 2012)). Ludwig has nonetheless raised the defense and thus it is theoretically possible that Giles' *Monell* claim would survive even if Ludwig is found not liable. *See Thomas v. Cook County Sheriff's Department*, 588 F.3d 445, 456 (7th Cir. 2009). Additionally, the proposed Consent expressly denies any wrongdoing on the part of the municipality.

While many courts in this district have accepted similar proposals from the City as an efficient means for guaranteeing plaintiffs in civil rights actions receive any compensatory damages awarded, under the current set of facts the proposed Consent offers little benefit to Giles.[1]

---

[1] Magistrate Judge Arlander Keys, in a Report and Recommendation in *Booker v. City of Chicago,* 2006 U.S. Dist. LEXIS 95577, at 5 (N.D. Ill. Dec. 15, 2006), referred to several judges in this district who grappled with similar "Consents" or "stipulations" from the City and taken issue with the City's attempt to avoid discovery and trial on *Monell* claims. It seems to this Court that the proposed Consent attempts to circumvent the public policy goals of

**Conclusion**

This Court finds that bifurcation and staying discovery is not warranted at this time. While some *Monell* discovery remains in this case, much of it appears to be complete. This Court finds Giles' observation that "[i]f the City genuinely believed that bifurcation best serves the interest of this litigation and judicial economy… [it] should have filed the instant motion shortly after plaintiff filed his *Monell* claim in February of this year" is a valid one. The City would have known of the scope of discovery at least by the time Giles issued his discovery requests in May of this year. Yet, the City waited until *Monell* discovery was well underway and this Court expressed reluctance to grant the City's requested 120 day extension, to seek bifurcation and a stay. Based on the foregoing, this Court denies the City's Motion for Bifurcation and to Stay Discovery of the *Monell* Claim [44]. The Court grants the request for an extension of time to complete discovery [39] and will allow the parties until March 4, 2014, to complete all discovery. Dispositive motions are due April 7, 2014. Status hearing is set for March 3, 2014, at 9:00 a.m.

IT IS SO ORDERED.

Date: December 6, 2013.

Entered: _____
United States District Judge

---

*Monell* claims by insulating the City from litigating and accepting responsibility if their practices and polices result in constitutional injuries.