IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCIROCCO GILES, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 6746 |
| | ) | |
| v. | ) | Judge Coleman |
| | ) | |
| NICOLAS LUDWIG and the CITY OF CHICAGO, et al., | ) ) | Magistrate Judge Schenkier |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO BAR ROGER CLARK'S OPINIONS AS AN EXPERT WITNESS AS TO THE CITY**

Pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and its progeny, Defendant City of Chicago moves to exclude Roger Clark as an expert witness against the City in this case. For reasons explained below, Clark's opinions are not reliable – one of the twin standards of the admissibility of expert testimony. Accordingly, Clark's purported expert opinions as to the City should be rejected, and Clark should be barred from offering them.[1]

**<u>Argument</u>**

The test for the admissibility of expert testimony in a federal trial is codified in Rule 702 of the Federal Rules of Evidence ("Testimony by Expert Witnesses"):

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[1] Plaintiff has retained Clark to offer opinions with regard to the conduct of Defendant Ludwig. This motion is not directed to those opinions.

1

>    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>    (b) the testimony is based on sufficient facts or data;
>
>    (c) the testimony is the product of reliable principles and methods; and
>
>    (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, Rule 702 requires that (1) the expert be qualified; (2) the testimony be reliable; and (3) the testimony be relevant. With regard to all expert testimony, trial judges act as gatekeepers to guarantee reliability.[2] "The insistence on reliability helps to ensure the integrity of the judicial process, and is of such transcendent importance that judges can act *sua sponte* to prohibit testimony that does not pass muster under *Daubert*."[3]

Pursuant to Fed. R. Civ. P. 26(a)(2), Roger Clark – a professional litigation consultant for plaintiffs on police matters – was retained by Plaintiff to give expert testimony in support of Plaintiff's *Monell* claim against Defendant City of Chicago. As to the City, Clark offered the following opinions:

>    1. There is an existing custom and practice within the Chicago Police Department ("CPD") of an unconstitutional use of deadly force.
>
>    2. There is an existing custom and practice within the CPD chain of command to "look the other way" when their officers resort to the unnecessary and excessive use of deadly force.

---

[2] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*).

[3] *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 318-19 (N.D.Ill. 2008) (Cole, J.) (citations omitted).

> 3. The collective failure within the CPD chain of command in this regard supports an organizational cultural understanding within the rank and file resulting in a documented propensity to resort to excessive and/or unnecessary deadly force.
>
> 4. The City keeps investigations of the use of deadly force by police officers "open" in order to prevent any opportunity for public review, to facilitate the deterioration of memory and evidence, and to prevent timely discipline, which is tantamount to no discipline.[4]

In forming his opinions about investigations of the use of deadly force, Clark reviewed portions of 263 investigative files from the Independent Police Review Authority ("IPRA") or the Office of Professional Standards ("OPS") from 2006 to 2011.[5] With regard to the 144 files for which the investigation was still "open,"[6] Clark reviewed only the face sheets, or intake forms, from the investigation.[7] With regard to the 119 files for "closed" investigations,[8] he reviewed only the investigation summaries.[9] Clark never reviewed a complete investigative file from among the sample of 263 investigations.[10] In fact, he admitted at his deposition that he has

---

[4] *See* Expert Report of Roger Clark ("Report") at 6, 7. Clark's Report is attached hereto as Exh. A. At his deposition, Clark acknowledged that these were his only opinions as to the City. *See* Transcript of Deposition of Roger Clark, dated January 24, 2014 ("Deposition"), at 138-39, 198. The section of Clark's deposition transcript during which he was questioned about his opinions as to the City is attached as Exh. B.

[5] *See* Deposition at 142-143, 148.

[6] An "open" investigation is one where an investigation has been initiated, but IPRA has not reached its final determination with regard to whether the shooting is justified.

[7] *See* Deposition at 163.

[8] A "closed" investigation is one where IPRA has completed its investigation and has reached a finding with regard to the shooting of either "justified" or "not justified." *See id.* at 156-157.

[9] *See id.* at 163.

[10] *See id.* at 147, 159, 161.

never seen an entire investigative file related to the use of deadly force by a Chicago police officer.[11]

More to the point of this motion, Clark admitted that he would have to see the entire files "if I were going to comment on the quality of each investigation."[12]

> Q. Okay. Of the 111 files that were classified as justified, do you disagree with that finding in any of them?
>
> A. I couldn't make that determination.
>
> Q. Why?
>
> A. Because I did not have a complete document, and I could not make that kind of evaluation.
>
> Q. Okay.
>
> A. I only took what the department itself said about it.
>
> Q. Okay. So with regard to the 111 files with a justified finding, you have no way of knowing whether any of them should have been unjustified shootings, correct?
>
> A. That's correct.[13]

Thus, because he never reviewed complete investigative files, Clark is incompetent to opine on the quality of *any* investigation of the use of deadly force by Chicago police officers. Hence, his opinion that the CPD has a custom and practice of the unconstitutional use of deadly force, which is based on nothing more than snippets of such files, is unreliable on its face, and he should be barred from presenting it at trial.

---

[11] *See id.* at 167.

[12] *Id.* at 162.

[13] *Id.* at 172-73.

Furthermore, as a matter of logic and common sense, once Clark's first opinion collapses, then his second and third opinions must also collapse, because the existence of a practice in CPD of unconstitutional use of deadly force is the necessary predicate for those opinions. If the alleged practice does not exist, then there is nothing regarding which the CPD chain of command can look the other way, and hence there is nothing to cause "a documented propensity to resort to excessive and/or unnecessary deadly force."

Clark's fourth opinion concerns "open" investigations, which supposedly benefit CPD in three ways. However, Clark testified that IPRA investigations are not open to public review,[14] and that he does not know if there is a time limit to disciplining a Chicago police officer after an investigation is initiated.[15] Thus, Clark himself subverts the reliability of these opinions. Finally, while Clark opined that open investigations "facilitate the deterioration of memory and evidence," he was confronted at his deposition with selections from IPRA's annual reports – which Clark testified he had reviewed.[16] In response, he conceded that this information provides overwhelming evidence of all the steps that IPRA in fact takes to guarantee that its investigations begin almost immediately after a police-involved shooting is reported, thereby ensuring the preservation of memory and evidence.[17]

---

[14] *See id.* at 179-180.

[15] *See id.* at 175-177.

[16] *See id.* at 180.

[17] *See id.* at 181-88.

**Conclusion**

For the reasons explained above, Clark's opinions in this case cannot survive scrutiny for reliability and are singularly unhelpful to the trier of fact. Consistent with Rule 702 and "*Daubert's* uncompromising insistence that expert testimony must be reliable,"[18] this Court should exercise its gatekeeping obligations and exclude Clark as an expert witness against Defendant City of Chicago.

Respectfully submitted,

STEPHEN PATTON
Corporation Counsel of the City of Chicago

By: **/s/ GEORGE J. YAMIN, JR.**
Senior Counsel

30 North LaSalle Street
Suite 900
Chicago, Illinois 60602
(312) 744-0454
Atty. No. 06217483

---

[18] *Sommerfield*, 254 F.R.D. at 320.