**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SCIROCCO GILES,             )
                                       )
            Plaintiff,         )
                                         )        No. 12-cv-6746
v.                                      )
                                       )        Judge Sharon Johnson Coleman
NICHOLAS LUDWIG and the CITY OF    )
CHICAGO,                       )
                                       )
            Defendants.      )

**MEMORANDUM OPINION AND ORDER**

Defendant City of Chicago ("the City") moves for summary judgment on plaintiff Scirocco Giles' *Monell* claim (Count VII) of the Amended Complaint [67]. For the reasons stated herein, the City's motion is denied.

**Background**

The following facts are undisputed for purposes of this motion.[1] For section 1983 municipal liability, the City Council of the City of Chicago is the City's final policymaker. The Mayor and Police Superintendent may also be final policymakers. The Independent Police Review Authority ("IPRA") is the City entity that investigates allegations of excessive force and other types of police misconduct, including all police-involved shootings. Prior to the creation of IPRA, the Office of Professional Standards ("OPS") conducted such investigations. IPRA was created after members of the City Council and the general public expressed concerns that the OPS was an ineffective mechanism for addressing police misconduct and that it lacked the confidence of City residents that it would independently and aggressively investigate misconduct by police officers.

---

[1] Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts (Dkt. 84) contains 87 numbered paragraphs instead of the 40 allowable under the Local Rule. This Court has therefore disregarded paragraphs 41-87 as improperly presented without leave of court.

The reassessment of OPS and the creation of IPRA were prompted by two high-profile incidents of alleged police misconduct in December 2006 and February 2007 that convinced the City's administration to listen to the concerns of aldermen and residents of Chicago. Various constituencies, including members of the general public, faith-based organizations, scholars, and community organizations, as well as alderman, the City's Law Department, and the Police Department, began to consider whether and how to reform the City's agency for investigating and disciplining such misconduct. OPS was staffed entirely by civilians, but it was part of the Chicago Police Department ("CPD"), resulting in non-sworn CPD employees investigating sworn officers. This situation raised questions about the neutrality and independence of these investigations. The CPD Superintendent was the final authority as to the investigative findings and discipline recommended by the Chief Administrator of OPS. OPS had little recourse to challenge the CPD Superintendent. In June 2007, the City Council's Committee on Police and Fire convened a public hearing at which a number of individuals and groups testified about a proposed ordinance that "called for significant changes to OPS."

In November 2007, the City Council by unanimous vote approved a final version of the ordinance that effectively abolished OPS and created IPRA. The mayor appointed the Chief Administrator of IPRA with the advice and consent of the City Council. The ordinance mandated that IPRA's offices were located in a facility outside the police department. The Chief Administrator was to be appointed by the mayor and approved by the City Council for four-year terms and subject to removal only for good cause. The Chief Administrator is "responsible for the general management and control of the independent police review authority," and had "full and complete authority to administer the office in a manner consistent with the ordinances of the city, the laws of the state and the rules and regulations of the police board." In the event that the Superintendent recommends a disciplinary action different from that of the Chief Administrator, he must submit a

written explanation to the Chief Administrator. The Superintendent and the Chief Administrator then must meet to discuss these reasons, and if the Chief Administrator does not concur, she must submit both the Superintendent's response and her own objections to a separate three-member panel composed of members of the Police Board for its review. The Superintendent has the burden of overcoming the Chief Administrator's recommendation for discipline.

The IPRA ordinance conferred on the Chief Administrator the power to issue subpoenas to secure "both the attendance and testimony of witnesses and the production of relevant information," and the power to conduct investigations into complaints of coercion, bias-based verbal abuse, and excessive force. IPRA also has the power to review all cases settled by the Law Department in which a complaint was registered against a police office and to conduct an investigation if one is warranted. The IPRA ordinance provides that if its investigations are not concluded within six months of initiation, the Chief Administrator must notify the Mayor's office, the City Council Committee on Police and Fire, the complainant, and the employee named in the complaint or his counsel of the general nature of the complaint or the information giving rise to the investigation and the reasons for the failure to complete the investigation within six months.

In July 2008, the Committee on Police and Fire, by resolution of its members, held a joint hearing of the Committees on Finance and Police and Fire, at which the Chief Administrator appeared. The annual hearings of the Budget Committee are a means of holding IPRA accountable to the City Council and for the City Council to exercise oversight over IPRA to ensure that it is doing the job.

CPD personnel are first to arrive on any scene with a police-involved shooting. IPRA cannot compel an officer to give a statement within 24 hours of the shooting pursuant to the collective bargaining agreement with the Fraternal Order of Police. The IPRA Annual Report 2010-2012,

suggests that this waiting period "delays a crucial component" of the IPRA investigation. IPRA can recommend discipline, but has no means of enforcing it.

On April 24, 2014, the City produced IPRA's undated decision finding that the shooting was justified because Giles was "breaking the law by refusing to stop, and fleeing while in possession of a handgun." For the five year time period that plaintiff's expert Roger Clark reviewed, IPRA closed 119 shooting investigations, finding 111 justified, 6 not justified, and 2 were not indicated. The six shootings that IPRA found not justified did not involve civilians, but were accidents in the locker room, range, etc. For this five year time period, "no shootings by the Chicago Police Department of subjects were ever declared to be unjustified." At the time of Clark's expert report, November 9, 2013, the number of open shooting cases went back over 6 years to 2007 (4 cases), and included numbers of open investigations from 2008 (8 cases), 2009 (41 cases), 2010 (40 cases), and 2011 (48 cases, including Giles' shooting).

Plaintiff Giles offers many of his expert Roger Clark's opinions as statements of fact. While the City admits that Clark offers these opinions, it objects to the substance of them and cites to their own expert. These opinions are just that opinions and are not proper statements of material fact.

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper where the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. *Fed. R. Civ. P. 56(a); Celotex v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005).

**Discussion**

The City moves for summary judgment on Giles' *Monell* claim for municipal liability. Giles alleges the City is liable for the acts of Ludwig because it has a widespread policy and practice of failing to investigate and discipline police misconduct. The City argues that Giles cannot present sufficient evidence to survive summary judgment on any of the elements of Section 1983 municipal liability. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

In order to prevail on his claim of municipal liability, Giles must prove that Ludwig is liable on the underlying substantive claim in order to recover damages from the City under either a failure to train or failure to implement theory. *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003). "A municipality will be held liable for the violation of an individual's constitutional rights for failure to train adequately its officers only when the inadequacy in training amounts to deliberate indifference [on the part of final policy makers] to the rights of the individuals with whom the officers come into contact." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Generally, in order to find municipal liability there must be a policy, or practice that is so widespread as to have the "force of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).

This Court has already found that a factual question remains for the jury to resolve on the issue of whether Ludwig violated Giles' constitutional rights by shooting him. Further, the City admits that there is still an issue of whether IPRA simply takes as true Ludwig's statement to IPRA that he saw Giles in the headlights of his squad car and Giles started to turn toward Ludwig, even though that is "clearly not there" in the dashboard camera videotape. Indeed, Giles contends that IPRA has a policy and practice of "looking the other way" and delaying investigations into police-involved shootings. It is undisputed that for the five year time period that plaintiff's expert Roger Clark reviewed, "no shootings by the Chicago Police Department of subjects were ever declared to

be unjustified." At the time of Clark's expert report, November 9, 2013, the number of open shooting cases went back over 6 years to 2007 (4 cases), and included numbers of open investigations from 2008 (8 cases), 2009 (41 cases), 2010 (40 cases), and 2011 (48 cases, including Giles' shooting). This Court declines to grant summary judgment at this time because it is evident from the record that the investigative history of IPRA is subject to interpretation by the parties' competing experts. Resolution of competing experts' opinions requires credibility determinations that are inappropriate for the Court to engage in at the summary judgment stage.

**Conclusion**

Accordingly, this Court denies the City's motion for summary judgment on the issue of municipal liability [67] with the understanding that should Giles fail to establish a constitutional violation at trial, his *Monell* claim will also fail regardless of his expert's testimony on IPRA's custom and practice.

IT IS SO ORDERED.

Date: September 3, 2014

Entered: _____

United States District Judge