IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCIROCCO GILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12-cv-6746 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| NICHOLAS LUDWIG and the CITY OF ) | |
| CHICAGO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scirocco Giles filed a seven count Amended Complaint alleging four counts against defendant Nicholas Ludwig, including excessive force pursuant to 42 U.S.C. § 1983 and state law claims for intentional infliction of emotional distress, malicious prosecution, and battery.[1] Ludwig moves for summary judgment as to all of Giles' claims against him [65]. The Court denies the motion for the reasons stated herein.

**Background**

The following facts are undisputed for purposes of this motion. On September 20, 2011, at approximately 12:15 a.m. plaintiff Scirocco Giles was in possession of a loaded handgun that was tucked into his pants. Giles did not normally carry a handgun, but was carrying it for protection as he had previously been robbed in that area. Giles was a passenger in a car that stopped at the side of the road to talk to some women. The driver exited the vehicle. The two women got into the car. Police officers pulled up to the car, while the driver was still outside the car, and shined a light on them. The driver went to show the police his license. The officers asked Giles to step out of the car and he complied. They asked Giles to put his hands on the hood of the car, which he started to do

---

[1] Defendant City of Chicago separately moves for summary judgment on plaintiff's *Monell* claim for municipal liability, which the Court will address in a separate order.

1

before taking off running because he did not want the police to find the gun and he would lose his job. A foot chase ensued.

Defendant Chicago Police Officer Nicholas Ludwig became involved in the incident after hearing a radio call of the foot chase. He was driving a Chicago Police marked Tahoe. Ludwig did not know Giles prior to this incident. The radio call gave both a description of the person being chased on foot and the direction of flight. The radio call did not indicate whether the person being chased was armed. Ludwig pulled out his gun right after hearing the radio call and drove to the location with the gun in his hand. Ludwig had his window halfway down before he received the radio call. He did not turn on the siren or emergency overhead lights so that he would be less visible to the person being chased. Ludwig turned southbound down Racine and then saw Giles come out of an alley and then run northbound up Racine. Giles pulled the gun from his waistband because it was slipping out as he was crossing Racine. He proceeded to run with the gun in his hand. Ludwig attempted to block Giles by pulling his marked police SUV onto the curb. Ludwig then saw Giles continue to run north up the sidewalk and then in front of Ludwig's police vehicle with the gun in his right hand. After passing Ludwig's vehicle Giles ran northeast into a vacant lot.

There is conflicting testimony between Giles and Ludwig as to Giles' physical position when Ludwig shot him. Giles' entrance wound was on the left-hand side of his back right around the end of his rib cage and higher than his buttocks. Dr. Dorion Wiley treated Giles' gunshot wound when he arrived by ambulance at the hospital. There is conflicting testimony concerning the bullet's trajectory between Dr. Wiley and defendant's medical forensic expert Dr. Daniel Spitz.

It is undisputed that Giles was charged with two counts of aggravated unlawful use of a weapon and one count of aggravated assault. On July 26, 2012, Giles was found guilty of both counts of aggravated unlawful use of a weapon and not guilty of aggravated assault. As a result of the shooting, Giles is a paraplegic and is expected to never recover the use of his lower extremities.

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper where the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. *Fed. R. Civ. P. 56(a); Celotex v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005).

**Discussion**

*1. Reasonableness of the Use of Force*

Ludwig moves for summary judgment on Counts I and IV of the Amended Complaint, arguing that Ludwig's use of deadly force was reasonable under both the Fourth Amendment to the U.S. Constitution and Illinois state law. Deadly force is reasonable if the officer has probable cause to believe that the individual "poses a threat of serious physical harm, either to the officer or to others," or that the individual "committed a crime involving the infliction or threatened infliction of serious physical harm." *Tennessee v. Garner*, 471 U.S. 7, 11 (1985). Similarly, under Illinois law an officer "is justified in using force likely to cause death or great bodily harm only when he reasonably believes that such force is necessary to prevent death or great bodily harm to himself or such other person." 720 ILCS 5/7-5. To determine the reasonableness of the force used, courts examine the facts as a reasonable officer on the scene would have viewed them, recognizing "that officers often need to make split-second judgments based on rapidly developing events." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009).

Here, the reasonableness of Ludwig's actions remains a question of fact for the jury. It is undisputed that Ludwig knew that an individual had fled police on foot. The radio call gave both a description of the person being chased on foot and the direction of flight, but did not indicate

3

whether the person being chased was armed. It is also undisputed that Giles was in "full flight" when he crossed in front of Ludwig's marked police SUV. Although Ludwig testified that Giles had rotated around and begun to lift his gun when Ludwig shot him, Giles testified to the contrary. There is no evidence in the undisputed record to corroborate Ludwig's testimony. The medical records indicate that Giles was shot in the back. While the Court must look at the reasonableness of the use of force from the perspective of an officer confronting the situation, it must also examine the evidence in the light most favorable to plaintiff. This Court cannot say that Ludwig was objectively reasonable in using deadly force in this situation where he was unaware that Giles was armed until Ludwig shot him or that it was objectively reasonable under the circumstances where Ludwig was not aware of Giles having committed any crime beyond fleeing the police. Moreover, it is very much in dispute whether Giles raised his weapon. This Court finds a question of material fact exists for the jury to resolve as to the reasonableness of Ludwig's use of force.

*2. Qualified Immunity*

Next, Ludwig argues that he is entitled to summary judgment in his favor because he is entitled to qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). To overcome the defense of qualified immunity, a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation. *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001).

Here, there is no question there is no question that the standard for liability under the Fourth Amendment for the unjustified use of deadly force was well established in December 2011. Ludwig would be entitled to qualified immunity only if the circumstances surrounding the shooting "would not have alerted a reasonable officer that his acts could be deemed an application of

excessive force." *McNair v. Coffey*, 234 F.3d 352, 355 (7th Cir. 2000). If a jury might find Ludwig's actions objectively unreasonable, then this Court cannot find Ludwig entitled to qualified immunity at this stage. *See Dufour-Dowell v. Cogger*, 152 F.3d 678, 680 (7th Cir. 1998). The Court has already found that there is a factual question as to the reasonableness of Ludwig's use of deadly force against Giles. Therefore, Ludwig is not entitled to qualified immunity at this time.

*3. Malicious Prosecution*

Ludwig also moves for summary judgment on Count III Giles' malicious prosecution claim. To prevail on his malicious prosecution claim, Giles must establish that Ludwig commenced or continued either a criminal or a civil action against Giles; that the action terminated in favor of Giles; that Ludwig lacked probable cause for such a proceeding; that Ludwig acted with malice; and Giles has been damaged. *Joiner v. Benton Community Bank*, 82 Ill. 2d 40, 45, 411 N.E.2d 229 (Ill. 1980).

Here, Ludwig asserts Giles' allegation in his complaint that the criminal charge for which Giles was prosecuted is different than the one for which he was actually prosecuted. Nevertheless, it is undisputed that Giles was prosecuted criminally. Giles was found guilty of both counts of aggravated unlawful use of a weapon and not guilty of aggravated assault. Thus, the Court finds that the first two elements of malicious prosecution are established. The element of damages is also not in dispute. However, there are factual questions as to the existence of probable cause and malice.

Probable cause is a complete defense to any claim under 42 U.S.C. § 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Officers have probable cause for an arrest if the facts and circumstances within the officer's knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense. *Id.*

5

Here, it is undisputed that Giles was carrying a weapon in his hand when he encountered Ludwig. Giles admits to having the weapon in his hand and Ludwig testified that he saw the gun. However, there is a significant factual dispute as to whether Giles ever brandished or even turned in order to raise his gun and was not simply shot in the back as he ran. This Court finds a factual dispute as to the existence of probable cause for aggravated assault. A factual question also remains as to the existence of malice. Courts have found an inference of malice where there are allegations that an officer falsely claimed that an individual brandished a weapon and resisted arrest in an attempt to justify the use of deadly force. *See Robinson v. City of Harvey,* 2001 U.S. Dist. LEXIS 1930 (N.D. Ill. Feb. 15, 2001) (Lefkow, J.). Accordingly, Ludwig is not entitled to summary judgment on the issue of malicious prosecution.

*4. Intentional Infliction of Emotional Distress*

Ludwig also moves for summary judgment on Giles' claim of intentional infliction of emotional distress. In order for Giles to prevail on his claim of intentional infliction of emotional distress, he must establish: (1) that the conduct involved is extreme and outrageous, (2) that the defendant intended that his conduct inflict severe emotional distress or knew that there is a high probability that it will cause severe emotional distress, and (3) that the conduct caused severe emotional distress. *See, e.g., McGrath v. Fahey*, 126 Ill. 2d 78, 533 N.E. 2d 806, 809 (Ill. 1988). Conduct is extreme and outrageous when it goes "beyond all bounds of decency" and is considered intolerable. *Kolegas v. Heftel Broad Corp.*, 154 Ill. 2d 1, 607 N.E. 2d 201, 211 (Ill. 1992). Here, each party supports their argument with differing interpretations of the facts. Ludwig is adamant that Giles turned and raised his weapon, citing at least a 46-47 degree turn referred to by Ludwig's expert Dr. Spitz.[2] Giles, on the other hand, asserts that he did not turn and raise his weapon and cites all

---

[2] Dr. Spitz altered his testimony as to the degree that Giles turned reducing the degree of turn from 80-90 degrees.

the medical records that state he was shot in the back. Accordingly, this Court finds that it is a factual question for the jury to resolve whether Ludwig's conduct was extreme and outrageous.

*5. Tort Immunity Act*

Finally, Ludwig moves for summary judgment arguing that he is entitled to immunity on all of Giles' state law claims under the Illinois Tort Immunity Act unless Giles proves that Ludwig's act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202. Similarly to many of Ludwig's other arguments for summary judgment, his argument is based on the legal conclusion that he did not act willfully and wantonly because, under his version of events, Ludwig was justified in the use of force against Giles. While Ludwig contends that Giles' version of events – that he was shot in the back as he fled, rather than turned and raised his weapon – is unsupported by anything more than Giles's own testimony, Ludwig's version is equally a matter of credibility beyond the purview of this Court on summary judgment. Ludwig is therefore not entitled to immunity at this juncture.

**Conclusion**

Based on the foregoing, Ludwig's motion for summary judgment [65] is denied.

IT IS SO ORDERED.

Date: September 3, 2014

Entered: _____

United States District Judge