UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCIROCCO GILES, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 6746 |
| | ) | |
| v. | ) | Judge Coleman |
| | ) | |
| NICOLAS LUDWIG and the CITY OF CHICAGO, | ) | |
| | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S RULE 50 MOTION
FOR JUDGMENT AS A MATTER OF LAW**

Pursuant to Fed. R. Civ. P. 50(a), Defendant City of Chicago, by its attorney Stephen R. Patton, Corporation Counsel, moves this Court to grant judgment as a matter of law to the City on Plaintiff's *Monell* claim against it in Count VII of Plaintiff's Amended Complaint. In support of this motion, the City states:

1. Plaintiff Scirocco Giles seeks to hold the City liable for the constitutional injury he allegedly received at the hands of Defendant Officer Ludwig.

2. In Count VII of his Amended Complaint, Plaintiff claims that the City is liable to Plaintiff because it has a practice of failing to adequately investigate and discipline the use of deadly force by Chicago police officers.

3. Fed. R. Civ. P. 50(a) states:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

1

>   (A) resolve the issue against the party; and
>
>   (B) grant a motion for judgment as a matter of law, against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

4. In order for Defendant City of Chicago to be liable to Plaintiff on his federal claim against it, Plaintiff must prove *each* of the following by a preponderance of the evidence: (1) Defendant Ludwig violated Plaintiff's constitutional rights by using excessive force against him; (2) on September 20, 2011, it was the widespread practice of Defendant City of Chicago not to adequately investigate and discipline the use of deadly force by Chicago police officers; (3) the Chicago City Council as the City's final policymaker was deliberately indifferent to this practice; and (4) the City's widespread practice not to adequately investigate and discipline the use of deadly force by Chicago police officers was the direct cause of, or moving force behind, the violation of Plaintiff's constitutional rights.[1]

5. If Plaintiff cannot meet his burden of proof as to any one of these elements of a *Monell* claim, the City is entitled to judgment as a matter of law, because all of the requirements for establishing Section 1983 municipal liability–an underlying constitutional violation, the existence of a deficient municipal practice, final policymaker deliberate indifference, and causation–are linked in the conjunctive.[2] This Court should therefore grant the City's Rule 50(a) motion if Plaintiff fails to satisfy a single requirement.

---

[1] *See Ienco v. City of Chicago*, 286 F.3d 994, 997-98 (7th Cir. 2002) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91 (1978)); *Board of County Commissioners of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407-08 (1997).

[2] *See Ienco v. City of Chicago*, 286 F.3d at 997-98.

6. Assuming, *arguendo*, that Defendant Ludwig is found to have violated Plaintiff's constitutional rights by using excessive force against him in this matter, Plaintiff has failed to prove any of the remaining *Monell* elements.

7. First, in order to recover against the City of Chicago, Plaintiff must prove the existence of a *de facto* municipal practice that is so widespread, permanent, and well-settled that it constitutes a custom with the force of law, even though it is not authorized by written law or express policy.[3] Based on the evidence adduced during the Plaintiff's case, a reasonable jury would not have a legally sufficient evidentiary basis to find that Plaintiff has proven that the City has a widespread, permanent, and well-settled practice of failing to adequately investigate and discipline the use of deadly force by Chicago police officers. The opinions of Plaintiff's *Monell* expert, Roger Clark, provide an insufficient basis to prove the existence of this practice. Clark testified that he has seen only one complete investigative file in this case, but admitted that it is impossible to assess the adequacy of an investigation without reviewing the entire file. He also admitted that no competent expert could render an opinion regarding the adequacy of an investigation by merely reading the intake forms and summary reports from an investigative file – the only portions of an IPRA file that he in fact reviewed – and that in any event he only "reviewed superficially" those documents. And Clark conceded that the fact that every closed police-involved shooting during the relevant time period was found to be "justified" by IPRA could mean that the involved officers performed their job well. In addition, IPRA Supervisor Bruce Dean testified that the actual investigations into police-involved shootings that IPRA conducts are fair, thorough, independent, and of high quality; that IPRA provides meaningful

---

[3] *See Lawrence v. Kenosha County*, 391 F.3d 837, 844 (7th Cir. 2002).

training to its investigators; and that IPRA's administrative operations, and changes made by IPRA in the investigations of the use of deadly force (such as the use of audio-recorded statements of witnesses and police officers involved in the shootings within hours of the incident) are significant improvements over the procedures of the Office of Professional Standards (OPS), IPRA's predecessor agency. Thus, the evidence presented at trial does not support Plaintiff's claim that the City has a practice of failing to adequately investigate and discipline the use of deadly force by Chicago police officers, and this Court should resolve this issue in favor of Defendant City. And since Plaintiff must prove all of the *Monell* elements to prevail against it, the City is thereby entitled to judgment as a matter of law on Plaintiff's *Monell* claim.

8. Second, in order to prevail against the City of Chicago, Plaintiff must prove that the City's final policymaker – the City Council – was deliberately indifferent to the practice that Plaintiff alleges. "A plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences" on the part of a final municipal decisionmaker.[4] Moreover, to prove deliberate indifference, Plaintiff must show that the final policymaker approved the practice, and failure to eliminate a practice cannot be equated to approving it.[5] Based on the evidence adduced during the Plaintiff's case, a reasonable jury would not have a legally sufficient evidentiary basis to find that Plaintiff has proven that the City Council was deliberately indifferent to a purported

---

[4] *Bryan County*, 520 U.S. at 407.

[5] *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir. 1993).

practice of failing to adequately investigate and discipline the use of deadly force by Chicago police officers.  Alderman Joseph Moore testified that in response to concerns about the quality of investigations of misconduct by OPS, the City Council in 2007 passed an ordinance creating IPRA; that the newly-created agency was a significant improvement over OPS due to its independence from the Chicago Police Department, the powers vested in its Chief Administrator and the agency-at-large, its accountability to the City Council, and its transparency; and that the Council exercised oversight over the operations of IPRA by conducting both special hearings and annual hearings of the Budget Committee, at which IPRA was held "accountable" by the Council for its activities, including how it investigated police-involved shootings.  He further testified that there were no indications to the Council during these hearings of any failures in IPRA's investigations of shooting cases, or of any such issues not being addressed by IPRA.  Thus, the evidence presented at trial does not support Plaintiff's claim that the City's final policymaker was deliberately indifferent to its purported practice of failing to adequately investigate and discipline the use of deadly force by Chicago police officers, and this Court should resolve this issue in favor of Defendant City.  And again, since Plaintiff must prove all of the *Monell* elements to prevail against it, the City is thereby entitled to judgment as a matter of law on Plaintiff's *Monell* claim.

9. Third, in order to prevail against the City of Chicago, Plaintiff must prove that the alleged widespread practice of the City was the direct cause of any violation of Plaintiff's constitutional rights.  "A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal

action and the deprivation of federal rights."[6] Based on the evidence adduced during the Plaintiff's case, a reasonable jury would not have a legally sufficient evidentiary basis to find that Plaintiff has proven that the City's purported practice of failing to adequately investigate and discipline the use of deadly force by Chicago police officers caused Defendant Officer Ludwig to use excessive force against Plaintiff in violation of Plaintiff's constitutional rights. It is the uncontested testimony of Defendant Ludwig that he was aware on September 20, 2011, that IPRA automatically investigated all police-involved shootings; that he was not aware that IPRA failed to adequately investigate such shootings; that his decision to shoot Plaintiff was not influenced by his knowledge that IPRA would subsequently investigate that shooting; and that he decided to shoot Plaintiff because he himself "did not want to be killed." Plaintiff presented no evidence as to this element, but merely offered a conclusory, unsubstantiated opinion based on pure speculation. Thus, the evidence presented at trial does not support Plaintiff's claim that the municipal practice alleged by Plaintiff caused Defendant Ludwig to use deadly force against Plaintiff in violation of Plaintiff's constitutional rights. And since Plaintiff must prove all of the *Monell* elements to prevail against it, the City is thereby entitled to judgment as a matter of law on Plaintiff's *Monell* claim.

WHEREFORE, for the reasons explained above, this Court should enter judgment as a matter of law for Defendant City of Chicago and against Plaintiff on Plaintiff's *Monell* claim brought in Count VII of his Amended Complaint.

---

[6] *Bryan County*, 520 U.S. at 404.

                    Respectfully submitted,

                    STEPHEN PATTON
                    Corporation Counsel of the City of Chicago

By:    **/s/ GEORGE J. YAMIN, JR.**
            Senior Counsel

30 North LaSalle Street - Suite 900
Chicago, Illinois 60602
(312) 744-0454
Atty. No. 6217483